IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA EX REL. BILL LOCKYER, ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,<br><br>            Plaintiff,<br><br>    v.<br><br>POWEREX CORP., a Canadian Corporation, dba POWEREX ENERGY CORP., and DOES 1 - 100,<br><br>            Defendants. | 2:05-cv-143-GEB-PAN<br><br>ORDER |

Plaintiff moves to remand this action to Sacramento County Superior Court. Defendant Powerex Corp. opposes the motion, contending that federal question removal jurisdiction exists. Further, Defendant moves to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes this dismissal motion.

BACKGROUND

The California energy crisis of 2000-2001 provides the backdrop to this litigation. From 1998 to the present, Defendant, a Canadian corporation, has conducted electricity transactions in the California markets. (Compl. ¶¶ 4, 43.) Plaintiff alleges that from 1999 through 2001, Defendant engaged "in a number of unlawful, unfair,

1

fraudulent, and manipulative trading schemes to the detriment of the People of the State of California," in violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq.) ("UCL") and the California Commodity Law of 1990 (Cal. Corp. Code § 29500, et seq.). (Compl. ¶¶ 1, 19, 44.) Plaintiff's complaint seeks an injunction, restitution, disgorgement, damages, civil penalties, and other equitable relief. (Id. ¶ 2.)

## DISCUSSION

### Motion to Remand

Plaintiff argues this action must be remanded to state court because there is no federal question removal jurisdiction. Plaintiff contends its complaint "is a law enforcement action brought against Powerex to enforce California's antifraud and consumer protection laws . . . ." (Pl.'s Mot. to Remand at 2.) Further, Plaintiff contends that "the Attorney General's case solely addresses the fraudulent market manipulation and gaming strategies employed by Powerex which adversely impacted the citizens of California." (Id.) Plaintiff further contends that "Powerex['s] removal [cannot be] based on the Foreign Sovereign Immunity Act" and that "compelling the Attorney General to move its state-law related case to federal court would violate the Eleventh Amendment's provision protecting a state's sovereign immunity." (Id. at 13-14.)

Defendant counters that removal was proper for two independent reasons: (1) there is federal question jurisdiction under the Federal Power Act, 16 U.S.C. § 825p ("FPA"), and (2) Defendant's "foreign state" status as defined by the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603 et seq. ("FSIA"). Defendant contends federal question removal jurisdiction exists since "[t]he Attorney General's

2

claims arise under federal law because he alleges misconduct in wholesale power transactions, which are exclusively the province of federal law, and implicate specific federal tariffs governing the transactions at issue." (Def.'s Opp'n to Pl.'s Mot. at 13.) Defendant also contends it was "entitled to remove this action because it satisfies the statutory criteria of a foreign state codified in [FSIA since] it is both an agent and instrumentality of the Province of British Columbia and . . . is also a wholly owned subdivision of the Province's statutory agent BC Hydro." (Id. at 2.)

A. Standard

An action filed in state court can be removed to federal court if it "originally could have been filed in federal court." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987); see also 28 U.S.C. § 1441(b) ("Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.") Defendant bears the burden of establishing federal jurisdiction, "and the removal statute is strictly construed against removal jurisdiction." Prize Frize, Inc. v. Matrix (U.S.) Inc., 167 F.3d 1261, 1265 (9th Cir. 1999).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. . . . The rule makes the plaintiff the master of the claim; [it] may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).

### B. Federal Question Jurisdiction Under the Federal Power Act

Plaintiff argues this action must be remanded because "[t]he Attorney General's well-pleaded Complaint solely asserts state causes of action based on California's consumer protection and commodities laws [that] protect California citizens from fraud and deceit." (Pl.'s Mot. to Remand at 13.) Plaintiff argues:

> In particular, the Attorney General's Complaint alleges that Powerex's market manipulation and gaming strategies constituted "unfair" and "fraudulent" business practices pursuant to California Business and Professions Code § 17200 (Complaint, ¶¶ 64, 65), and that Powerex's market manipulation and gaming strategies constituted "unlawful" business practices within the meaning of § 17200 "because they violate California law, including but not limited to California Corporations Code § 29536." (Complaint ¶ 66). Additionally, the Complaint alleges that Powerex's market manipulation and gaming strategies violated the California Commodity Law because they involved willful and fraudulent acts involving offers to sell, sales, offers to purchase, and purchases of commodities and commodity options.
>
> ***
>
> [B]ecause the Complaint does not rely on any federal law to create the causes of action or to seek relief, it is clear that the Attorney General's well-pleaded Complaint does not present a federal question. Thus, removal is improper based on the face of the Complaint.

(Id. at 5-6.)

Defendant rejoins that Plaintiff cannot rely on the well-pleaded complaint rule since Plaintiff's complaint is "artfully pled" to avoid federal jurisdiction. Defendant contends "the Attorney General's state law claims necessarily implicate substantial disputed questions concerning the FPA [and] the Attorney General's state law claims are completely preempted by the FPA." (Def.'s Opp'n to Pl.'s Mot. at 13.) Plaintiff counters that "courts

4

have long recognized that there is no complete pre-emption under the FPA" and "Powerex has failed to demonstrate that the Attorney General's Consumer Protection Action is an 'artfully pleaded' federal cause of action." (Pl.'s Reply at 4, 9.)

The artful pleading doctrine applies to a situation "where a plaintiff articulates an inherently federal claim in state-law terms." Brennan v. S.W. Airlines Co., 134 F.3d 1405, 1409 (9th Cir. 1998). "The . . . doctrine allows courts to delve beyond the face of the state court complaint and find federal question jurisdiction by recharacteriz[ing] a plaintiff's state-law claim as a federal claim." Lippitt v. Raymond James Fin. Servs., Inc., 340 F.3d 1033, 1041 (9th Cir. 2003) (internal quotation marks and citations omitted). "Whether the [doctrine] applies requires an analysis of whether plaintiff['s] claims 'arise under' federal law." In re Cal. Retail Natural Gas & Elec. Antitrust Litig., 170 F. Supp. 2d 1052, 1056 (D. Nev. 2001). "[C]ourts have used the . . . doctrine in: (1) complete preemption cases, and (2) substantial federal question cases. Subsumed within this second category are those cases where the claim is necessarily federal in character, or where the right to relief depends on the resolution of a substantial, disputed federal question." Lippitt, 340 F.3d at 1041-42 (internal citations omitted).

A state law claim is completely preempted if federal law "provide[s] the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action." Id. at 1042 (citing Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003)). Complete preemption is rare; the Supreme Court has only found complete preemption in three categories of cases: certain causes of action under the Labor Management Relations Act, the

Employee Retirement Income Security Act, and the National Banking Act. Beneficial Nat'l Bank, 539 U.S. at 8.

"[T]he artful pleading doctrine [also] allows federal courts to [exercise] jurisdiction over state law claims that implicate a substantial federal question." Lippitt, 340 F.3d at 1042. "[A] case is 'necessarily federal' when it falls within the express terms of a statute granting federal courts exclusive jurisdiction over the subject matter of the claim." Hendricks v. Dynegy Power Mktg., Inc., 160 F. Supp. 2d 1155, 1161 (S.D. Cal. 2001). Further, "[e]ven where . . . state law creates the cause of action, . . . federal jurisdiction may still lie if 'it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims.'" Arco Envtl. Remediation, LLC v. Dep't of Health & Envtl. Quality, 213 F.3d 1108, 1114 (9th Cir. 2000) (citing Rains v. Criterion Sys., Inc., 80 F.3d 339, 345 (9th Cir. 1996)).

The Ninth Circuit cautions that the artful pleading doctrine "should [be] invoke[d] only in limited circumstances as it raises difficult issues of state and federal relationships and often yields unsatisfactory results. While the artful pleading doctrine is a useful procedural sieve to detect traces of federal subject matter jurisdiction in a particular case, it also has substantive implications on the scope of federal jurisdiction and efficiency." Lippitt, 340 F.3d at 1041 (internal quotation marks and citations omitted).

### 1. Complete Preemption

Defendant argues "the FPA completely preempts the Attorney General's purported state law claims," contending that "[t]he FPA creates an exclusive federal scheme for the regulation of wholesale

6

1  electric power transactions, preempting state regulation." (Def.'s
2  Opp'n at 21-22.)  Plaintiff counters that "courts have long recognized
3  that there is no complete pre-emption under the FPA."  (Pl.'s Reply at
4  3, 4.)

5      The FPA does not completely preempt Plaintiff's state law
6  claims since the claims do not seek to enforce any "liability or duty
7  created by" the FPA.  See Hendricks, 160 F. Supp. 2d at 1160; Calif.
8  ex rel Lockyer v. Mirant Corp., 2002 WL 1897669, at * 6 (N.D. Cal.
9  Aug. 6, 2001); In re Cal. Retail Natural Gas & Elec. Antitrust Litig.,
10 170 F. Supp. 2d 1052 (D. Nev. 2001); Indeck Maine Energy, LLC v. ISO
11 New England, Inc., 167 F. Supp. 2d 675, 687 (D. Del. 2001).  The FPA
12 preempts only those claims that fall within the FPA's exclusive
13 jurisdictional provision.  This exclusive jurisdictional provision
14 provides that the federal courts "shall have exclusive jurisdiction of
15 violations of [the FPA] or the rules, regulations, and orders
16 thereunder, and of all suits in equity and actions at law brought to
17 enforce any liability or duty created by, or to enjoin any violation
18 of, [the FPA] or any rule, regulation, or order thereunder."  16
19 U.S.C. § 825p.

20             2. Substantial Federal Question

21      Defendant also contends that Plaintiff's removal was proper
22 because Plaintiff's "state law claims necessarily implicate
23 substantial disputed questions concerning the FPA."  (Def.'s Opp'n at
24 13.)  Defendant argues that Plaintiff's claims arise under federal law
25 because they "cannot be judged without consideration of the . . .
26 tariffs [filed with the Federal Energy Regulatory Commission
27 ("FERC")]."  (Id. at 17.)  Defendant contends Plaintiff's complaint
28 was artfully pled in the guise of state claims "to avoid [alleging]

1   explicit claims of violations of the ISO and the PX tariffs," since
2   Plaintiff recognizes that "no court - state or federal - could
3   determine whether Powerex's conduct was 'unlawful, unfair or
4   fraudulent' without resort to the tariffs."  (Id.)  Defendant argues
5   that Plaintiff's claims arise under federal law because Plaintiff
6   alleges misconduct in wholesale power transactions, which are
7   exclusively the province of federal law, and implicate specific
8   federal tariffs governing the transactions at issue.
9           Plaintiff counters that the artful pleading doctrine does
10  not apply because "The Complaint does not seek to enforce any federal
11  obligations that Powerex might have violated."  (Pl.'s Reply at 6.)
12  Plaintiff argues that "any allusions to federally-regulated entities
13  like the ISO and PX, that were made in order to provide the context
14  for the gaming allegations, do not change the state causes of action
15  into federal ones."  (Id. at 7.)  Moreover, Plaintiff argues that "the
16  Attorney General does not seek to enforce or challenge Powerex's
17  agreements with the ISO or its obligations under the MMIP.  Resolution
18  of any issues regarding federal tariffs is not necessary to resolve
19  the state law claims."  (Id.)
20          Thus, the issue is "whether [Plaintiff] has artfully phrased
21  a federal claim by dressing it in state law attire."  Lippitt, 340
22  F.3d at 1041.  "A careful reading of artful pleading cases shows that
23  no specific recipe exists for a court to alchemize a state claim into
24  a federal claim – a court must look at a complex group of factors in
25  any particular case to decide whether a state claim actually 'arises'
26  under federal law."  Id. at 1042-43.
27          Defendant contends that California ex rel. Lockyer v.
28  Dynegy, 375 F.3d 831 (9th Cir. 2004) ("Dynegy"), mandates denial of

8

1  Plaintiff's motion, arguing that the Attorney General unsuccessfully
2  argued in Dynegy, as he does here, "that the core of his allegations
3  was not that defendants expressly violated the FPA, but that they
4  'engaged in a pattern of fraudulent and unfair' behavior in
5  furtherance of their scheme to manipulate California energy prices."
6  (Def.'s Opp'n at 18 (citing Dynegy, 375 F.3d at 841).)  Defendant
7  contends that "Here, as in Dynegy, the Attorney General lacks an
8  independent state law basis for its Unfair Competition Law claim
9  because 'California's state claim represented a naked attempt to
10 enforce these federal obligations.'"  (Def.'s Opp'n at 19 (citing
11 Dynegy, 375 F.3d at 843).)  Defendant also contends that "Even if some
12 of the matters alleged in the Attorney General's Complaint do not fall
13 within the exclusive jurisdiction provision of the FPA, the
14 allegations regarding ancillary services – which repeat the Attorney
15 General's allegations in Dynegy – certainly do [and] [t]hose
16 allegations alone justify removal."  (Def.'s Opp'n at 19.)

Plaintiff counters, arguing Dynegy is distinguishable:

> In Dynegy, the state's lawsuit was expressly based on the defendants' violation of the ISO tariff . . . . Thus, the cause of action was deemed necessarily federal in character. . . . Here, the Attorney General does not assert violations of the ISO tariff.  The allegation that Powerex fraudulently offered to sell ancillary services is asserted as one of the various gaming strategies and fraudulent market manipulation schemes employed by Powerex to deceive California consumers.  Moreover, not only does the Complaint fail to allege the ISO tariff, but the issue of whether Powerex violated the ISO tariff agreement would not resolve whether anti-competitive conduct occurred under state law.

(Pl.'s Reply at 8.)

The Ninth Circuit found in Dynegy that the "relief [sought was] 'predicated on a subject matter committed exclusively to federal

9

jurisdiction.'  The state lawsuit turn[ed], entirely, upon the defendant's compliance with a federal regulation.  The tariff define[d] the companies' contractual obligation with respect to the conduct at issue.  Absent a violation of the FERC-filed tariff, no state law liability could survive."  Dynegy, 375 F.3d at 841.  The Court further stated that "The very face of California's complaint betrays that the gravamen of the complaint is the companies' alleged violations of federal tariff obligations.  It repeatedly cites the federal tariff and alleges that the companies violated the agreement embodied within it."  Id. at 841 n.6.  The claim for unlawfulness in Dynegy was "based entirely on alleged tariff obligations (i) to hold ancillary services capacity in reserve prior to receipt of an ISO dispatch instruction and (ii) to comply with ISO's dispatch instructions.  The federal tariff wholly govern[ed] the lawfulness of the companies' conduct.  Similarly, with respect to the 'unfair' and 'fraudulent' terms, the claims depend[ed] entirely upon the federal tariff."  Id.

Plaintiff's reference to a federal tariff in its complaint in the instant case is unlike the reference in Dynegy because Plaintiff's claims do not seek to enforce any federal law duty or liability; rather, Plaintiff seeks only to enforce state law duties and liabilities.  See id.; Compl. ¶ 66.  Therefore, this case is distinguishable from Dynegy since in Dynegy, "[t]he state lawsuit turn[ed], entirely, upon the defendant's compliance with a . . . FERC-filed tariff. . . ."  Id. at 841.  Thus, in Dynegy, "the reference to and necessity of relying upon federal law [was] unavoidable."  Id. at 841 n.7 (distinguishing Lippitt).

Lippitt concerned allegations analogous to those alleged in

Plaintiff's complaint.  The Ninth Circuit held in <u>Lippitt</u> that since the plaintiff's complaint alleged fraud and deceptive advertising practices, rather than any violation of federal regulations, there was no need for inquiry about federal law because Lippitt "merely . . . allege[d] that Defendants' conduct was either unfair or fraudulent" and did not allege that the conduct was "unlawful" under federal law. <u>Lippitt</u>, 340 F.3d at 1043.

"<u>Lippitt</u> involved a private attorney general's lawsuit under Cal. Bus. & Prof. Code § 17200 et seq. ("UCL") against several brokerage firms for sales and marketing practices associated with certain investment product."  <u>Dynegy</u>, 375 F.3d at 841 n.7.  In the instant case, as in <u>Lippitt</u>,

> Federal law is not a necessary element of [Plaintiff]'s UCL claim.  To bring a UCL claim, a plaintiff must show either an (1) unlawful, unfair, or fraudulent business act or practice, or (2) unfair, deceptive, untrue or misleading advertising. Because . . . section 17200 is written in the disjunctive, it establishes three varieties of unfair competition-acts or practices which are unlawful, or unfair, or fraudulent.  [A] practice is prohibited as "unfair" or "deceptive" even if not "unlawful" or vice versa. Therefore, [Plaintiff] does not have to rely on a violation of [the FPA or any federal tariffs] to bring a UCL claim in California state court.  [Plaintiff] merely has to allege that Defendant['s] conduct was either unfair or fraudulent.

<u>Lippitt</u>, 340 F.3d at 1043.

Plaintiff's "allegations are sufficient to sustain the elements of [its] § 17200 claim without resort to federal law," since Plaintiff "makes no effort to enforce [any federal rights or obligations].  Rather, [Plaintiff] seeks to use . . . state statute[s], namely California's Unfair Competition Law [and the California Commodity Law], as . . . vehicle[s] to hold Defendant[]

11

liable for [market manipulation and gaming strategies]." Id. Whether Plaintiff's alleged activities underlying these state claims also violated the FPA or a federal tariff is irrelevant since Plaintiff, as master of its complaint, chose to allege that Defendant engaged in conduct that was unlawful under state law, instead of alleging violations of federal law. Caterpillar Inc., 482 U.S. at 392. "That the specific goal of protecting California customers from dishonest business practices . . . may comport with the broader . . . goals of the [FPA] is not enough to sweep [Plaintiff]'s complaint within the exclusive jurisdictional ambit of [16 U.S.C. § 825p]." Lippitt, 340 F.3d at 1043-44.

  Since Plaintiff's complaint does not seek to enforce any "liability or duty" created by the FPA, and Plaintiff alleges it can show that Defendant violated the alleged California claims without reliance upon federal law, Plaintiff's complaint was not artfully pled and Defendant lacked federal removal jurisdiction under the FPA.

  C. Federal Question Jurisdiction Under the Federal Sovereign Immunity Act

  Defendant also contends removal was appropriate since it is a foreign sovereign entitled to remove this action under FSIA. Under 28 U.S.C. § 1441(d), an action against a foreign state may be removed. A "foreign state" includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state. 28 U.S.C. § 1603(a). An "agency or instrumentality of a foreign state" means any entity (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof,

and (3) which is neither a citizen of a State of the United States nor created under the laws of any third country." Id. § 1603(b).  In California v. NRG Energy, Inc., the Ninth Circuit held that Powerex is "not a foreign instrumentality under FSIA." 391 F.3d 1011, 1026 (9th Cir. 2004).

But Defendant argues that NRG Energy is distinguishable because in NRG Energy, Powerex was not then a wholly owned subdivision of a province of Canada, and Powerex now is a wholly owned subdivision of the Province of British Columbia's statutory agent BC Hydro.  Thus, Defendant argues it is a foreign state for purposes of FSIA.  However, "only a direct ownership of a majority of shares by the foreign state satisfies the statutory requirement [of FSIA]." Dole Food Co. v. Patrickson, 538 U.S. 468, 474 (2003).  Although Powerex is owned by BC Hydro and BC Hydro is an agent of the Province, the Province does not itself own a majority of the shares of Powerex.  Therefore, Powerex is not a foreign state for purposes of FSIA.

Since federal removal jurisdiction is lacking, Plaintiff's remand motion is granted.[1]  Therefore, this action is remanded to Sacramento County Superior Court.

IT IS SO ORDERED.

Dated: August 22, 2005

/s/ Garland E. Burrell, Jr.
GARLAND E. BURRELL, JR.
United States District Judge

---

[1] Because of this ruling, neither Plaintiff's Eleventh Amendment argument nor Defendant's motion to dismiss need be addressed.